SECOND DISTRICT COURT OF THE CITY OF NEWARK.

SONYA BRAUNSTEIN, PLAINTIFF, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, A CORPORATION, DEFENDANT.

Decided July 9, 1943..

For the plaintiff, *Edward Gaulkin.*

For the defendant, *Collins & Corbin.*

FREUND, D. C. J.   Plaintiff's suit was predicated upon a policy providing that in the event the assured be totally and permanently disabled before the age of sixty years, premiums were to be waived and she was to receive the sum of $82.45 monthly during such disability.   Plaintiff became totally and permanently disabled about November 28th, 1930, and obtained the benefits of the policy under the total disability clause from that period up to December 28th, 1940.   On that date defendant denied plaintiff further benefit under the disability clause, in so far as the monthly payments were concerned, contending that plaintiff was no longer "permanently disabled."   Plaintiff, admittedly totally disabled up to that date, continues to be so considered until such time as she may again engage in a gainful occupation, meeting all the usual requirements of that occupation, without the danger of suffering hazardous consequences.

The only testimony offered by the defendant in its effort to contradict plaintiff's contention that she was still totally disabled, was that of experts.   Dr. Riggins and Dr. Pollak,

on behalf of the plaintiff, were the experts upon whose testimony the defendant's contention, to its greatest extent rested, the testimony of Dr. Huyler being almost entirely confined to the X-ray interpretations.

Plaintiff was unquestionably tubercular. The greater weight of the evidence indicated that the plaintiff, suffering that scourge, could not return to her usual occupation in the fur trade, unless she were apparently cured. Even defendant's experts acknowledged a distinction between an arrested case and an apparently cured case. Dr. Riggins, on behalf of the defendant, recognized the classifications adopted by accepted authorities, distinguishing those stages. Still, in spite of the weight of the evidence indicating that the tests usually applied for the purpose of determining whether one is apparently cured, were not made, Dr. Riggins testified that the plaintiff was apparently cured. His contention that the plaintiff advised him that she had not had a sputum examination for two years prior to his examination of her, due to the absence of sputum, indicated the absence of bacilli, is not well founded. The authorities accepted specifically by the defendant, provided that in the event no sputum test was made, a fasting gastric content should be obtained and examined, in lieu thereof. Argument by defendant's counsel that the term used was "should" and not "must" indicated merely a recommendation, is without merit.

The further test that the patient continue to live under ordinary conditions of life for a two-year period is an essential one in order to determine whether or not the patient is apparently cured. Ordinary conditions of life must, of necessity, entail engagement in the useful occupation, and in this instance, the only occupation in which plaintiff had been trained, moreover, the occupation which defendant contends the plaintiff can resume. Dr. Riggins' testimony to the effect that "ordinary conditions of life" for this plaintiff merely anticipate the quiet, leisure manner which she found necessary to pursue during the last ten years, is contrary to the evidence and the normal interpretation of the term, and inconsistent with the law as it prevails and as urged by the defendant in this cause.

I have given great consideration to the expert testimony offered in this cause. I recognize the philosophy that, as between the testimony of experts on behalf of those who engage them, and treatises by learned and accepted authors, the theories of the treatises, particularly those recognized by the testifying experts, is oft more acceptable.

The greater weight of the evidence indicates that the plaintiff was not "apparently cured" and because of the severity of the disability she suffered, should not be required to resume her gainful occupation until such time as she is "apparently cured."

Although the sum involved may be considered slight, the consequences of this verdict will seriously affect the interests and the rights of the parties to this cause. A study of the testimony warrants me in finding that this is an instance where the discretion of the court should be exercised in favor of setting aside the verdict. It may be interesting to note that the voluminous testimony taken in this matter, complicated and controversial to the extent that it compelled serious deliberation, resulted in a verdict by a lay jury in approximately fifteen minutes. So far reaching are the consequences of a determination under the terms of the policy, that further investigation by both parties to the suit would result in more substantial justice. The controversy is important and there is much reason to believe that justice has not been done.

Plaintiff's rule to show cause why judgment should not be set aside and a new trial granted is made absolute.